IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VALENTINO AMARO,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **MONTGOMERY COUNTY, et al.,** | : | |
| Defendants | : | No. 06-3131 |

**M E M OR A N D U M**

PRATTER, J.                                                                                     SEPTEMBER 8, 2008

## INTRODUCTION

Plaintiff Valentino Amaro, who initiated this action pro se but who is currently represented by counsel, sued the West Norriton Police Department, Detective Kelly,[1] Montgomery County Correctional Facility, Correctional Medical Care, Inc., and Nikki Holler, alleging under 42 U.S.C. § 1983 that he was subject to (1) excessive use of force while in the custody of the West Norriton Police Department, and (2) deliberate indifference to his serious medical needs while he was incarcerated at the Montgomery County Correctional Facility, both in violation of the Eighth Amendment to the United States Constitution.[2] Mr. Amaro later amended his pleadings to include a claim that Defendant Kelly violated his due process rights under the Fifth and Fourteenth Amendments.

Subsequently, Mr. Amaro stipulated to the dismissal of the West Norriton Police Department as a defendant, and also agreed to dismiss all claims against Detective Kelly except

---

[1] None of the pleadings on the docket reveal Detective Kelly's first name.

[2] Mr. Amaro initiated this action in November 2006 by filing a pro se Complaint against various defendants. In January 2008, the Court appointed counsel for Mr. Amaro and in March 2008, with the assistance of counsel Mr. Amaro filed a First Amended Complaint that narrowed the field of defendants and more articulately presented his claims.

for the Fourteenth Amendment due process claim. (See Docket No. 39.) That claim and Mr. Amaro's Eighth Amendment "deliberate indifference" claims remain.

Pending before the Court is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Montgomery County Correctional Facility, Correctional Medical Care, Inc., and Nikki Holler (collectively, the "Moving Defendants"). The Moving Defendants argue that none of Plaintiff's allegations rise to the level of an Eighth Amendment "deliberate indifference" violation. Plaintiff opposes the motion. For the reasons discussed below, the Moving Defendants' motion will be granted and Mr. Amaro's deliberate indifference claims will be dismissed without prejudice.

**FACTUAL BACKGROUND**

The facts alleged in Mr. Amaro's three complaints are sparse. In his First Amended Complaint Mr. Amaro's alleges that West Norriton Police Officers arrested him close to midnight on August 25, 2005. (Compl. ¶ 8.)[3] Mr. Amaro was transported to the Hospital of the University of Pennsylvania where he was treated for various injuries, including numerous broken bones, a deviated nasal septum and a slightly displaced fracture of his left zygomatic arch. (Compl. ¶¶ 9-10.) On August 26, 2005 at approximately 3:30 a.m. he was released to the custody of Detective Kelly of the West Norriton Police Department. (Compl. ¶ 9.)

Mr. Amaro alleges that Detective Kelly transported him to the West Norriton Police

---

[3] The First Amended Complaint does not describe the events that resulted in Mr. Amaro's ultimate arrest. However, in his original Complaint, Mr. Amaro stated that he was involved in an altercation with his former girlfriend, with whom he used to reside, and the former girlfriend's then-current boyfriend. Mr. Amaro claimed that these two individuals "brutally" beat him at his West Norriton home, and left him unconscious, bleeding and severely injured. He claims that he was "discovered" by the West Norriton Police Department and later arrested.

Station and "dumped" him face-first on to the concrete floor of a cell. (Compl. ¶ 12.) At 10:20 a.m. the following morning, Mr. Amaro was found in a pool of blood and taken to Hahnemann Hospital for additional treatment. (Compl. ¶ 13.) After he was released from Hahnemann later that evening, Mr. Amaro was arraigned and transported to Montgomery County Correctional Facility. (Compl. ¶ 14.)

Correctional Medical Care operates the medical unit at Montgomery County Correctional Facility. (Compl. ¶ 15.) Nikki Holler is the chief health care administrator for Correctional Medical Care. (Compl. ¶¶ 6, 15.)

Mr. Amaro claims that while he was housed at Montgomery County Correctional Facility, he did not receive a full physical examination by a doctor despite his many alleged injuries (Am. Compl. ¶ 16), he did not receive follow-up care suggested by the doctors at Hahnemann and Penn who initially treated his injuries (Am. Compl. ¶ 17), and he was not seen by an orthopedic specialist (Am. Compl. ¶ 18). He alleges that he filed numerous requests to staff, including Ms. Holler, seeking medical care and mental health counseling but received no relief. (Am. Compl. ¶ 19.) Mr. Amaro alleges that his nose continues to be displaced due to the lack of follow-up surgery.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (<u>quoting</u>

Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**DISCUSSION**

Mr. Amaro's civil rights claims arise under 42 U.S.C. § 1983. To establish a valid claim under § 1983, he must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him of rights, privileges and immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Prison officials violate a prisoner's Eighth Amendment rights if they are "deliberately indifferent" to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Pretrial detainees or other individuals who have been arrested but who have not been convicted of a crime and sentenced may state a "deliberate indifference" claim under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). The Eighth Amendment still provides a minimum standard of care or "floor" for determining the rights of a pretrial detainee, including the right to medical care. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (noting that the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner"). Thus, the "deliberate indifference" standard under either amendment is the same. Simmons v. City of Phila., 947 F.2d 1042, 1067 (3d Cir. 1991); Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988).

"Indifference" must be substantial to violate the Constitution, id. at 106, and state prison authorities have wide discretion regarding the nature and extent of medical treatment. A constitutional violation is not established by negligence or "an inadvertent failure to provide

adequate medical care." Id. at 105-06.  Instead, the alleged deliberate indifference of prison officials requires a sufficiently culpable state of mind, see Farmer v. Brennan, 511 U.S. 825, 834 (1994), and must rise to the level of "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104. Disagreements with a medical judgment cannot form the basis of a deliberate indifference claim.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

The Court of Appeals for the Third Circuit has indicated that deliberate indifference can be manifested by a variety of actions, including: (i) the denial of reasonable requests for medical treatment which expose an inmate to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons.  See Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987); see also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). With respect to what qualifies as a serious medical need, the court has held that "a medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Lanzaro, 834 F.2d at 347 (citations omitted).

At the outset, although none of the parties addressed this issue with respect to the instant motion, the Court notes that it is not clear from the pleadings whether Mr. Amaro should be categorized as a pretrial detainee or a sentenced prisoner during the events that form the basis for his claims against the medical service providers.  As noted above, Mr. Amaro's status will determine whether his deliberate indifference claims arise under the Cruel and Unusual Punishment Clause of the Eighth Amendment, which is reserved for prisoners who have been

sentenced, or the Due Process Clause of the Fourteenth Amendment, which provides the basis for similar claims brought by those individuals who have been arrested or are being detained but who have not been sentenced.  According to the First Amended Complaint, Mr. Amaro was arraigned after he had received medical treatment at Hahnemann and Penn but before he was sent to Montgomery County Correctional Facility.  There is no indication in any of Mr. Amaro's pleadings (or in his response to the defense motion) as to whether he was ever convicted of a crime or a sentence was imposed.  Rather, a fair reading of Mr. Amaro's First Amended Complaint indicates that he was a pretrial detainee who had been arraigned but had not been convicted of any crime when the complained-of events (or omissions) occurred (or did not occur).

As the Court will discuss below, Mr. Amaro's claims against the Moving Defendants will be dismissed for other reasons, and he will be extended leave to amend his pleadings.  Should Mr. Amaro choose to avail himself of this option, the Court encourages Mr. Amaro to clarify his status as either a prisoner who is entitled to the protections of the Eighth Amendment or a pretrial detainee who is entitled to the protections of the Due Process Clause of the Fourteenth Amendment, and plead his claim accordingly.

Secondly, as Moving Defendants accurately note, and Mr. Amaro appears not to contest, neither Montgomery County Correctional Facility nor Correctional Medical Care, Inc. is a "person" for purposes of § 1983.  See Ramalho v. Montgomery County Corr. Facility, No. 06-2036, 2007 U.S. Dist. LEXIS 44941, at *3-4 (E.D. Pa. June 21, 2007); Dixon v. Montgomery County Corr. Facility,  No. 89-0972, 1989 U.S. Dist. LEXIS 1649, at *2-3 (E.D. Pa. Feb. 21, 1989); Wiggins v. Montgomery County Corr. Facility, No. 87-6992, 1987 U.S. Dist. LEXIS

10664, at *2-3 (E.D. Pa. Nov. 16, 1987).[4]  Accordingly, Mr. Amaro cannot state a § 1983 claim against Montgomery County Correctional Facility and Correctional Medical Care, Inc., requiring dismissal of his claims against these defendants.[5]

Finally, Mr. Amaro does not allege any specific wrongful acts or omissions by Ms. Holler personally.  As note above, to show "deliberate indifference," Mr. Amaro must demonstrate a sufficiently culpable state of mind on the part of the defendant, see, e.g., Farmer, 511 U.S. at 828, and he must show personal involvement by the defendant, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In this case, Mr. Amaro appears to sue Ms. Holler because of her official capacity as chief administrator of Correctional Medical Care, and argues that she is liable for failing to ensure that Mr. Amaro was properly treated.  He also asserts one vague allegation that he "filed numerous requests to staff, including Nikki Holler, about the inadequate medical care and no mental health counseling but got no relief."  (Compl. ¶ 19.)  At best, he alleges that he directed at least one of his requests for medical care to Ms. Holler.

These allegations are insufficient to state any claims against Ms. Holler.  Mr. Amaro does not allege that Ms. Holler personally, intentionally denied his requests for medical treatment, that

---

[4] Moving Defendants raised this issue in their motion and again in their reply brief, but Plaintiff's response to the defense motion is silent on this issue.

[5] Mr. Amaro's pleadings imply that, for § 1983 purposes, the actions of Correctional Medical Care employees should be attributed to Correctional Medical Care itself.  However, Correctional Medical Care cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). In order for Correctional Medical Care to be liable, Mr. Amaro must identify a policy or custom that caused his injuries.  Mr. Amaro's pleadings do not allege, and his response to the defense motion does not argue, that there is any policy or custom relevant here, that Correctional Medical Care employees acted or failed to act in accordance with a policy or custom, or that there is a causal link between a policy and custom and his injuries.  Therefore, Mr. Amaro has failed to state a Monell claim.

10664, at *2-3 (E.D. Pa. Nov. 16, 1987).[4]  Accordingly, Mr. Amaro cannot state a § 1983 claim against Montgomery County Correctional Facility and Correctional Medical Care, Inc., requiring dismissal of his claims against these defendants.[5]

Finally, Mr. Amaro does not allege any specific wrongful acts or omissions by Ms. Holler personally.  As note above, to show "deliberate indifference," Mr. Amaro must demonstrate a sufficiently culpable state of mind on the part of the defendant, see, e.g., Farmer, 511 U.S. at 828, and he must show personal involvement by the defendant, see Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In this case, Mr. Amaro appears to sue Ms. Holler because of her official capacity as chief administrator of Correctional Medical Care, and argues that she is liable for failing to ensure that Mr. Amaro was properly treated.  He also asserts one vague allegation that he "filed numerous requests to staff, including Nikki Holler, about the inadequate medical care and no mental health counseling but got no relief."  (Compl. ¶ 19.)  At best, he alleges that he directed at least one of his requests for medical care to Ms. Holler.

These allegations are insufficient to state any claims against Ms. Holler.  Mr. Amaro does not allege that Ms. Holler personally, intentionally denied his requests for medical treatment, that

---

[4] Moving Defendants raised this issue in their motion and again in their reply brief, but Plaintiff's response to the defense motion is silent on this issue.

[5] Mr. Amaro's pleadings imply that, for § 1983 purposes, the actions of Correctional Medical Care employees should be attributed to Correctional Medical Care itself.  However, Correctional Medical Care cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). In order for Correctional Medical Care to be liable, Mr. Amaro must identify a policy or custom that caused his injuries.  Mr. Amaro's pleadings do not allege, and his response to the defense motion does not argue, that there is any policy or custom relevant here, that Correctional Medical Care employees acted or failed to act in accordance with a policy or custom, or that there is a causal link between a policy and custom and his injuries.  Therefore, Mr. Amaro has failed to state a Monell claim.

she was personally aware of his need for treatment and refused to provide such treatment, or even that she was personally aware that he was unduly suffering. It is not clear from Mr. Amaro's pleadings what injuries he was suffering from when he was admitted at Montgomery County Correctional Facility, because he had already been treated by doctors at Hahnemann and Penn by that time. Mr. Amaro vaguely alleges that the doctors who treated him at these hospitals recommended certain "follow-up" care, but he does not allege that Ms. Holler (or any other individual) was aware of these alleged "follow-up" instructions, and that she deliberately chose not to follow them. Thus, Mr. Amaro's claims against Ms. Holler will be dismissed. However, the Court will dismiss these claims without prejudice and will permit Mr. Amaro to amend his pleadings to state his claims with greater specificity and to clarify which employees he believes prevented him from obtaining medical care. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).[6]

---

[6] The Court notes that Mr. Amaro's pleadings provide decidedly little detail. For example, no employees of Correctional Medical Care, other than Ms. Holler, are named as defendants, and no "John" or "Jane Doe" defendants are named. Notably, no details of a temporal nature are provided following the date Mr. Amaro was admitted at Montgomery County Correctional Facility. There is no indication as to how long Mr. Amaro has been incarcerated, when he first requested medical treatment, when such treatment was allegedly refused, and who allegedly refused. No details shed any light on when, after Mr. Amaro arrived at Montgomery County Correctional Facility at 8:30 p.m. on August 26, 2005, any of the complained-of events occurred.

Moreover, Mr. Amaro stated that he complained about the "inadequate medical care" he received, which implies that he was receiving some medical care while he was incarcerated at Montgomery County Correctional Facility. However, Mr. Amaro does not explicitly state that he received any medical care from Correctional Medical Care, and also does not explain in what ways the medical care was "inadequate" other than his averments quoted above in paragraphs 16 through 20 of the First Amended Complaint. Other than suggesting that his broken nose should have been re-set pursuant to "follow-up" instructions from doctors at Hahnemann and Penn, Mr. Amaro does not explain what "follow-up" care was necessary. In short, although Mr. Amaro's allegations reference the injuries he suffered and for which he received treatment from doctors at Hahnemann and Penn, his allegations do not state to what "serious medical need" the Moving

**CONCLUSION**

Because Mr. Amaro's Complaint, as amended by his First and Second Amended Complaints, fails to state a claim against Montgomery County Correctional Facility, Correctional Medical Care, Inc., or Nikki Holler, this action will be dismissed as to those defendants.  The Court will grant leave to Mr. Amaro to further amend his pleadings to allege facts that state a cause of action under the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishment Clause of the Eighth Amendment, as applicable, and to state such claims with greater specificity and clarify which individuals he believes prevented him from obtaining medical care.

Accepting Mr. Amaro's factual allegations as true, as the Court must at this stage of the proceedings, the Court acknowledges that when Mr. Amaro first arrived at Montgomery County Correctional Facility it appears he was in poor condition.  Undoubtedly, Mr. Amaro endured difficult times as he was injured in an altercation, arrested, treated at two different hospitals, and subsequently incarcerated.  The Court does not foreclose the possibility that Mr. Amaro may be able to assert a valid "deliberate indifference" claim.  However, the facts alleged do not establish such a claim against any of the parties currently named as defendants in this lawsuit.

An Order consistent with this Memorandum follows.

---

Defendants showed a "deliberate indifference."

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALENTINO AMARO, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY, et al., | : | |
| Defendants | : | No. 06-3131 |

O R D E R

AND NOW, this 8th day of September, 2008, upon consideration of the Motion to Dismiss filed by Montgomery County Correctional Facility, Correctional Medical Care, Inc., and Nikki Holler (Docket No. 41), the Plaintiff's response thereto (Docket No. 46), and the Defendants' reply brief (Docket No. 47), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that:

1. The Motion to Dismiss filed by Montgomery County Correctional Facility, Correctional Medical Care, Inc., and Nikki Holler (Docket No. 41) is **GRANTED**.

2. Mr. Amaro's claims against Montgomery County Correctional Facility, Correctional Medical Care, Inc., or Nikki Holler are **DISMISSED** without prejudice.

3. Mr. Amaro may further amend his Complaint within twenty (20) days from the date of entry of this Order.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge